UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHON WEI ZHAI,<br><br>　　　　　　Petitioner,<br><br>v.<br><br>JAMES JANECKA, Warden of the Adelanto Detention Center; ERNESTO SANTACRUZ JR., Acting Director of the Los Angeles Field Office, United States Immigration and Customs Enforcement; PAM BONDI, Attorney General, United States Department of Justice; KRISTI NOEM, Secretary, United States Department of Homeland Security; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; and DOES 1-5,<br><br>　　　　　　Respondents. | Case No. 5:26-cv-00649-SPG-RAO<br><br>**ORDER DENYING APPLICATION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND DISMISSING HABEAS PETITION AS MOOT [ECF NO. 1, 3]** |

　　　　Before the Court is the Application for Ex Parte Temporary Restraining Order, (ECF No. 3 ("Motion")), filed by Petitioner Zhong Wei Zhai[1] ("Petitioner"). The Court has read

---

[1] The docket reflects Petitioner's name as "Zhon Wei Zhai," but Petitioner's Counsel represents that this was a typographical error. *See* (ECF No. 10 at 1).

and considered the Motion and concluded that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES the Motion. Because Petitioner has been removed from the United States and because Petitioner identifies no collateral consequences of his deportation that could be redressed by the Habeas Petition, the Court DISMISSES, as moot, the Habeas Petition.

## I.   BACKGROUND

The following allegations are taken from Petitioner's Petition for Habeas Corpus and are undisputed unless otherwise stated. (ECF No. 1 ("Petition")). Petitioner is a citizen of China who entered the United States without inspection or parole in February 2024. (*Id.* ¶ 15). Petitioner was apprehended by a Border Patrol Officer, who determined that Petitioner had entered unlawfully and took Petitioner into custody. (*Id.* ¶ 24). Upon examination, Respondents elected not to place Petitioner in expedited removal proceedings but instead placed him in regular removal proceedings and issued a Notice to Appear on February 22, 2024. (*Id.* ¶ 25). Respondents then granted Petitioner a conditional parole from custody pursuant to 8 U.S.C. § 1226(a). (*Id.* ¶ 26). Petitioner was released from custody on an Order of Recognizance and ordered to enroll in the Intensive Supervision Appearance Program ("ISAP"). (*Id.* ¶ 27). Petitioner timely enrolled in ISAP. (*Id.* ¶ 28).

Petitioner did not appear at his July 16, 2024, hearing, and the Immigration Judge ordered him removed to China in absentia. (*Id.* ¶ 29). Petitioner then filed a timely motion to reopen, which was denied by the Immigration Judge on August 13, 2024. (*Id.* ¶ 30). Petitioner subsequently filed an appeal to the Board of Immigration Appeals. (*Id.* ¶ 31). Respondents did not immediately take Petitioner into custody when the administrative order of removal became final, and the 90-day removal period ended on November 15, 2024. (*Id.* ¶ 32). Petitioner continued to report regularly to ICE and ISAP as ordered. (*Id.* ¶ 33).

On January 27, 2026, Petitioner was detained at his regularly scheduled ISAP appointment. (*Id.* ¶ 34). Petitioner alleges that he did not receive an interview or any

explanation of the reasons for the revocation of his conditional parole. (*Id.* ¶ 35). Following his arrest, Petitioner suffered a cardiac episode and was rushed to a hospital, where he underwent open heart surgery. (*Id.* ¶ 37). Petitioner was then returned to ICE custody. (*Id.*).

Petitioner initiated this action on February 12, 2026, asserting claims for violations of substantive and procedural due process, deprivation of the right to counsel, failure to provide reasonable accommodations, and violations of the APA, the INA, and ICE regulations. (*Id.* at 20-27). As relief, Petitioner requests that the Court order Petitioner's immediate release, enjoin Respondents from re-detaining Petitioner without notice and an opportunity to be heard, enjoin Respondents from transferring Petitioner outside of the jurisdiction of this Court, and enter a judgment declaring Petitioner's detention unlawful. (*Id.* at 29).

Petitioner filed the instant Motion on the same day, seeking a temporary restraining order enjoining Respondents from removing Petitioner from this District and requiring Respondents to release Petitioner pending adjudication of the Petition or, alternatively, to provide Petitioner with a bond hearing. (Mot. at 28). On February 13, 2026, the Court issued an order setting a hearing and briefing schedule. (ECF No. 5). To effectuate its jurisdiction, the Court ordered that Petitioner not be removed from the Central District of California until the Court adjudicated the Motion. (*Id.*).

On February 16, 2026, Respondents filed an opposition to the Motion, in which they indicate that Petitioner was removed from the United States on February 12, 2026.[2] (ECF No. 8 ("Opposition")). Respondents argue that, because Petitioner has been removed, there is no longer a live controversy, and the Petition should be dismissed as moot. (*Id.* at 3). On February 17, 2026, Petitioner filed a Reply, in which he argues that the Petition is not

---

[2] Although the Court ordered Respondents not to remove Petitioner pending adjudication of the Motion, the record reflects that Petitioner was removed before the Court issued this Order. *See* (ECF No. 8-1 (showing that Petitioner was deported to China on February 12, 2026)). The Court therefore finds no violation of its February 13, 2026, order.

moot because he continues to suffer from collateral consequences of removal, including a ten-year ban on re-entry and the persisting consequences of Respondents' denial of medical care. (ECF No. 10 ("Reply") at 5).

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical.") (citation omitted). A plaintiff may secure a temporary restraining order upon establishing that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (citing *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

In deciding an application for a temporary restraining order, the court is permitted to consider the parties' pleadings, as well as declarations, affidavits, and exhibits submitted in support of and in opposition to the application. *See Earth Island Inst. v. Nash*, No. 1:19-cv-01420-DAD-SAB, 2020 WL 1936701, at *6 (E.D. Cal. Apr. 21, 2020) ("[I]n considering a motion for a preliminary injunction, a court may consider and rely upon declarations, affidavits, and exhibits submitted by the parties.") (citations omitted); *Harper*

*v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096, 1119–20 (S.D. Cal. 2004) (considering declarations submitted by defendants to deny plaintiff's request for a preliminary injunction); *BOKF, NA v. Estes*, 299 F. Supp. 3d 1117, 1122 (D. Nev. 2018). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citations omitted). The urgency of the relief sought necessitates a prompt determination and can make it difficult to obtain admissible evidence. *Id.*

### III. DISCUSSION

Before the Court can reach the merits of Petitioner's Motion, the Court must determine whether this matter is moot. Whether Petitioner's removal from the United States renders the matter moot depends on whether the Petition continues to present a case or controversy under Article III, § 2 of the United States Constitution. "This case-or-controversy requirement subsists through all stages of federal judicial proceedings." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Thus, "[t]o maintain an extant claim, a litigant must continue to have a personal stake in the outcome of the suit throughout all stages of federal judicial proceedings." *Abdala v. INS*, 488 F.3d 1061, 1063 (9th Cir. 2007) (internal quotation marks and citation omitted). "This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer*, 523 U.S. at 7 (internal quotation marks and citation omitted).

The Court concludes that this matter is moot. As the Ninth Circuit has explained, "[d]eportation from the United States after filing a habeas petition does not necessarily moot a petitioner's claim." *Abdala*, 488 F.3d at 1063. However, for a habeas petition to continue to present a live controversy after the petitioner's deportation, "there must be some remaining 'collateral consequence' that may be redressed by success on the petition." *Id.* at 1064. Here, Petitioner has not identified any collateral consequences of deportation that could be redressed by success on the Petition. As discussed above, Petitioner makes

the following requests for relief: (1) assume jurisdiction over this matter; (2) issue a writ of habeas corpus on the ground that Petitioner's continued detention violates the Due Process Clause and order Petitioner's immediate release; (3) in the alternative, issue injunctive relief requiring Respondents to immediately release Petitioner on the grounds that his detention violates his statutory rights; (4) issue an injunction ordering Respondents not to arrest and re-detain Petitioner without notice and opportunity to be heard; (5) issue an injunction ordering Respondents not to transfer Petitioner outside the jurisdiction of this Court; (6) enter a judgment declaring Petitioner's detention to be unlawful; and (7) award Petitioner reasonable costs and attorney's fees. (Petition at 29). These forms of relief relate solely to Petitioner's detention, not the order of removal. Because Petitioner is no longer detained—and, due to his deportation, cannot be re-detained under the present circumstances—the Court cannot grant Petitioner any relief on his Petition. Therefore, his Petition is moot. *See Abdala*, 488 F.3d at 1065 (finding habeas petition moot following petitioner's removal because the petition "challenged only the length of his detention," such that "successful resolution of [his] pending claims could no longer provide the requested relief").

Petitioner argues that he "remains subject to resulting consequences of Respondents' unlawful action such as persisting and potentially life threatening medical consequences due to denial of medical care and medication and a 10-year bar on re-entry." (Reply at 5). The Ninth Circuit has recognized that a bar on re-entry "is a concrete disadvantage imposed as a matter of law," which could qualify as a collateral consequence. *Zegarra-Gomez v. INS*, 314 F.3d 1124, 1127 (9th Cir. 2003). However, "where the grounds for habeas relief will not redress collateral consequences, a habeas petition does not continue to present a live controversy once the petitioner is released from custody." *Abdala*, 488 F.3d at 1064. Here, Petitioner has raised no challenge to the legality of his final order of removal. As such, even if Petitioner were to prevail on his claims in the Petition, the Court could not redress the collateral consequences of removal. Moreover, even if Petitioner did raise a challenge to his removal order, this Court, under the present circumstances, would not have

jurisdiction to review that challenge. *See* 8 U.S.C. § 1252(a)(5) ("Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal."); *Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) ("[Section 1252] makes the circuit courts the 'sole' judicial body able to review challenges to final orders of deportation, exclusion, or removal.").[3] Similarly, the Court would lack jurisdiction to review a challenge to the *execution* of Petitioner's removal order. 8 U.S.C. § 1252(g) ("[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision . . . [to] execute removal orders against any alien."); *Reno v. American-Arab Anti-Discrimination Comm'n*, 525 U.S. 471, 482 (1999).

The same is true as to Petitioner's denial of medical care arguments. Even assuming this could qualify as a collateral consequence of Petitioner's deportation—a proposition that Petitioner has not supported with any relevant case law—the Petition does not request any related relief. Release from detention, an injunction prohibiting re-detention, and a declaration that Petitioner's detention was unlawful would not redress Petitioner's alleged injury. As such, "the grounds for habeas relief will not redress [the] collateral consequences," and the Petition is moot. *Abdala*, 488 F.3d at 1064.

---

[3] The Court notes, as several other district courts have found, that *Zegarra-Gomez* and other Ninth Circuit cases discussing a re-entry bar as a collateral consequence predate the Real ID Act, Pub. L. 109-13, 119 Stat. 302 (May 11, 2005), which eliminated district court jurisdiction over habeas petitions challenging orders of removal. *See Grossi v. Current or Acting Field Off. Dir.*, No. CV 23-8785-FMO(E), 2024 WL 263591, at *2 n.2 (C.D. Cal. Jan. 24, 2024); *Rios-Bamac v. Lynch*, No. 19-cv-01939-NYW, 2019 WL 13214051, at *5 n.4 (D. Colo. Nov. 20, 2019)

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES the Motion and DISMISSES, as moot, the underlying Habeas Petition.

**IT IS SO ORDERED.**

DATED: February 19, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE